**MADISON SQUARE GARDEN, L.P., Plaintiff–Appellant,**

v.

**NATIONAL HOCKEY LEAGUE,** National Hockey League Enterprises, L.P., NHL League Interactive Cyberenterprises, LLC, NHL Enterprises Canada, L.P. and NHL Enterprises, B.V., Defendants–Appellees.

No. 07–4927–cv.

United States Court of Appeals, Second Circuit.

March 19, 2008.

---

Glen D. Nager, Jones Day, Washington, DC, Meir Feder, Jones Day, New York, N.Y. (Thomas F. Cullen, Jr., Joe Sims, Jones Day, Washington, DC on the brief), for Plaintiff–Appellant.

Shepard Goldfein, James A. Keyte, Paul M. Eckles, Peter S. Julian, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendant–Appellee.

PRESENT: Hon. B.D. PARKER, Hon. DEBRA ANN LIVINGSTON, Circuit Judges, Hon. JANET C. HALL,[1] District Judge.

## SUMMARY ORDER

We assume the parties' familiarity with the underlying facts and procedural history of this case, as well as the issues on appeal. Appellant Madison Square Garden, L.P. ("MSG") seeks review of a November 2, 2007, 2007 WL 3254421, order of the United States District Court for the Southern District of New York (Preska, *J.*), denying its request for injunctive relief.

MSG owns an interest in and operates the New York Rangers hockey team, which is a member of the National Hockey League ("NHL"). Until 2007, each NHL member club, including the Rangers, maintained its own team website on the Internet. Beginning in 1996, the clubs agreed to subject these websites to certain format, advertising, sponsorship, merchandising, and other content restrictions imposed by the NHL. In 2000, the NHL Commissioner issued "Internet Regulations" that set forth further guidelines for the websites, including expressly reserving to the NHL the right to control up to 35% of each club's website advertising, and the requirement that each website include an "NHL Area" for league content.

In 2006, a "New Media Committee" convened by the Commissioner recommended that each team website be migrated to a common technology platform to be managed by the league. Each site would be linked to the NHL website and would contain certain common features, although the individual clubs would remain responsible for suppling artwork and local editorial content, providing other features and enhancements, and selling local advertising. The NHL would retain the same amount of space on each site for national advertising and other league content. In June 2006, a majority of NHL clubs voted to adopt and implement the New Media Strategy.

MSG did not. Over the next year, MSG and the NHL engaged in various negotiations over the website issue, which were

1. The Honorable Janet C. Hall, of the United States District Court for the District of Connecticut, sitting by designation.

ultimately fruitless. On September 28, 2007, under the threat of league fines if it refused to migrate the Rangers site to the common platform, MSG filed suit, alleging antitrust violations against Appellees (collectively, "the NHL") under Section 1 of the Sherman Act, 15 U.S.C. § 1, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, as well as under New York law. MSG also moved for a preliminary injunction against the NHL's effort to ban the Rangers from operating an independent website. On November 2, 2007, the district court denied the request, holding that MSG had failed to demonstrate a likelihood of success or a sufficiently serious question going to the merits. MSG appeals this determination.

We review the grant or denial of a preliminary injunction for abuse of discretion. *Lusk v. Vill. of Cold Spring*, 475 F.3d 480, 484 (2d Cir.2007). A district court abuses its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 88–89 (2d Cir.2006) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir.2001)) (footnotes omitted). "A party seeking preliminary injunctive relief must establish: (1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, *and* (2) a likelihood of irreparable harm if the requested relief is denied." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 152–53 (2d Cir.2007). In this case, the district court found that MSG did not demonstrate a likelihood of success or sufficiently seri-

ous questions going to the merits under either a "quick look" or a "rule of reason" analysis.

The district court did not abuse its discretion in denying injunctive relief. First, it correctly determined that MSG failed to establish a likelihood of success or sufficiently serious questions under "quick look" analysis. "Quick look" is essentially an abbreviated form of rule of reason analysis, to be used in cases in which the likelihood of anticompetitive effects is so obvious that "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 770, 119 S.Ct. 1604, 143 L.Ed.2d 935 (1999); *see also Todd v. Exxon Corp.*, 275 F.3d 191, 207 (2d Cir.2001). A court must abandon "quick look" and proceed to a full-blown rule of reasons analysis, however, "once the defendant has shown a procompetitive justification for the conduct." *Bogan v. Hodgkins*, 166 F.3d 509, 514 n. 6 (2d Cir.1999).

We agree with the district court that "[i]t is far from obvious that [the NHL's ban on independent websites] has no redeeming value." Rather, the district court correctly cited "several procompetitive effects of the New Media Strategy." These procompetitive benefits preclude application of "quick look" analysis. *See Bogan*, 166 F.3d at 514 n. 6 (briefly applying "quick look" but returning to Rule of Reason analysis, because the defendant offered "sound allegations of procompetitive benefit").

The district court also did not abuse its discretion in finding that MSG did not establish a likelihood of success or sufficiently serious questions under rule of reason analysis. Under rule of reason, a court must "determine whether [ ] re-

straints . . . are reasonable in light of their actual effect on the market and their pro-competitive justifications." *Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir.1997). First, a plaintiff "bears the initial burden of showing that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market." *Id.* (internal quotation marks and citation omitted). "If the plaintiff succeeds, the burden shifts to the defendant to establish the pro-competitive redeeming virtues of the action. Should the defendant carry this burden, the plaintiff must then show that the same pro-competitive effect could be achieved through an alternative means that is less restrictive of competition." *Id.* (internal quotation marks and citation omitted).

MSG did not show that the NHL's website ban has had an actual adverse effect on competition in the relevant market. Nor did MSG demonstrate that the many procompetitive benefits of the NHL's restriction could be achieved through an alternative means that is less restrictive of competition. While there will certainly be substantive issues for the district court to address on the merits—for example, how the antitrust laws apply to the NHL as a sports league, and what the relevant market is in this case—the district court's conclusion that preliminary injunctive relief was unwarranted falls well within the range of permissible decisions, and did not constitute an abuse of discretion.

We have carefully considered MSG's remaining arguments and find them without merit.

For the foregoing reasons, the judgment of the district court is AFFIRMED.